# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GREGORY A. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-00551-JMS-MPB |
| | ) | |
| CORIZON, NURSE MCNEW Individually | ) | |
| and in her Official Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## Entry Granting Motion for Summary Judgment
## on Defendants' Affirmative Defense of Exhaustion

Plaintiff Gregory A. Taylor, an offender incarcerated within the Indiana Department of Correction ("IDOC"), filed this lawsuit on February 21, 2017. Mr. Taylor alleges that on September 12, 2016, while an inmate at the New Castle Psychiatric Center, he broke his foot and defendant Nurse McNew refused to provide him appropriate care and delayed his access to medical treatment. He further alleges that defendant Corizon failed to schedule and provide timely treatment for his foot injury.

Defendants seek resolution of this action through summary judgment. Defendants assert that they are entitled to judgment as a matter of law because Mr. Taylor failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit.

For the reasons explained below, Defendants' motion for summary judgment, dkt. [33], is **granted** and Plaintiff's motion for preliminary injunction, dkt. [27], is **denied as moot.**

# I. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

# II. Undisputed Facts

Applying the standard set forth above, the following facts are undisputed.

Mr. Taylor was incarcerated at New Castle Correctional Facility, Psychiatric Unit ("NCCF") at the time his foot was injured. He was transferred to Wabash Valley Correctional Facility ("Wabash Valley"), where he is currently incarcerated, on February 14, 2017.

### A. Offender Grievance Process

As an inmate incarcerated with the IDOC, the Offender Grievance Process has been available to Mr. Taylor. The purpose of the Offender Grievance Process is to provide administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement. All offenders are made aware of the Offender Grievance Process during orientation to the IDOC and at the facilities. Further, copies of the Offender Grievance Process and its administrative procedures are placed in various locations in IDOC facilities for ready access by the offenders.

The IDOC recognizes only one grievance process. The complete grievance process consists of three stages: (i) an informal attempt to solve a problem or address a concern, which can be followed by (ii) the submission of a written formal grievance outlining the problem or concern and other supporting information, and the response to that submission, which can be followed by (iii) a written appeal of the response to a higher authority and the response to that appeal.

Under the grievance procedures, an offender is required to attempt to resolve a complaint informally before filing a formal grievance. If an inmate is unable to resolve his complaint informally, he may file a Formal Grievance form by submitting a completed Form 45471, "OFFENDER GRIEVANCE," no later than 20 business days from the date of the incident giving rise to the complaint or concern. The facility Grievance Coordinator must either return an unacceptable form or provide a receipt for an accepted form. If an offender does not receive either a receipt or a rejected form from the Grievance Coordinator within seven working days of submitting it, the offender must immediately notify the Grievance Coordinator of that fact and the Grievance Coordinator must investigate the matter and respond to the offender's notification.

The Grievance Coordinator has fifteen (15) business days from the date the grievance is received to complete an investigation and provide a response to the inmate. If an inmate receives no response within twenty (20) business days of being investigated by the Grievance Coordinator, he may appeal as though the grievance has been denied.

Upon receipt of the grievance response from the Grievance Coordinator, the inmate is responsible for reviewing the response and determining whether it adequately addresses the issues in the grievance. The inmate is permitted to appeal the response to the Offender Grievance Manager if he disagrees with the formal response at the facility level. The inmate may mark the line on the Level 1 Finding (i.e., Facility Finding) next to "Disagree" if he wishes to proceed to an appeal.

Appeals must address the basic issues of the grievance. The appeal may contain additional facts or information regarding the original issue and may raise concerns regarding the response from the previous level, but it shall not raise new or unrelated issues. The offender must state why the previous response was unacceptable, thereby establishing a rationale for the appeal and the basis for a reinvestigation. The appeal must be legible, signed, and dated by the offender, unless the offender cannot sign the appeal and a staff member has indicated why the offender was not able to sign.

The Grievance Manager must complete the investigation and submit a response to the appeal within fifteen (15) business days from the date of receipt, unless he or she notifies the inmate in writing within that 15-day period that the appeal will take additional time. The Grievance Manager may take one extension of fifteen (15) additional business days to respond to the appeal, but after that the appeal is deemed denied. The decision of the Grievance Manager is final.

### B. Mr. Taylor's Grievance History

Mr. Taylor's grievance history reflects that he filed one formal grievance that was accepted while he was incarcerated at NCCF during the period of May 23, 2016 through February 14, 2017 (Grievance No. 93594).

Mr. Taylor attached to his complaint an unfiled formal grievance form dated October 23, 2016, referring to Nurse McNew's denial of medical care on September 12, 2016. Dkt. 1-1 at 2. He also attached the grievance return reflecting that the grievance form was rejected as untimely (more than twenty working days from the date of the incident) and for requesting an improper remedy. Dkt 1-1 at 1. Mr. Taylor provides no further evidence to support his claim that he completed the grievance process with respect to the claims asserted in this lawsuit.

The grievance records reflect that on September 30, 2016, Mr. Taylor filed a formal grievance (Grievance No. 93594) based on his claims that he had not received appropriate medications for his mental health conditions while he was at NCCF and that he was being denied access to his medical records based on his mental health competency. (Mr. Taylor repeated these allegations in a second formal grievance submitted on October 8, 2016, which was assigned the same grievance number as it contained the same allegations).

On October 31, 2016, the Grievance Coordinator at NCCF, Jennifer Smith, responded to Grievance No. 93594 stating that Mr. Taylor had been seen several times for mental health evaluation, had refused to participate in group therapy, and had refused a physician visit. Mr. Taylor signed the grievance response report stating that he disagreed with the findings and he requested the next grievance step. Pursuant to that request, Ms. Smith noted on the Grievance Response form that an appeal form was sent to Mr. Taylor on November 7, 2016.

On November 8, 2016, Mr. Taylor submitted a grievance appeal form for Grievance No. 93594. Ms. Smith received Mr. Taylor's grievance appeal form on November 10, 2016. She sent Mr. Taylor a Return of Grievance form on November 14, 2016, stating that his grievance appeal was rejected in that he had improperly raised new, unrelated issues in his appeal; he needed to provide additional information concerning the issue stated in his appeal that he had failed to receive copies of his medical records; and he had failed to completely fill out the appeal form. Mr. Taylor was informed that if he chose to correct the problems listed in the return of his appeal form, he must do so and re-submit his appeal form within five working days.

Mr. Taylor did not submit a corrected appeal or otherwise respond to the return of his grievance appeal form as to Grievance No. 93594. Mr. Taylor did not complete an appeal of Grievance No. 93594 prior to filing the present lawsuit.

On February 14, 2017, Mr. Taylor was transferred to WVCF.

Mr. Taylor filed the present lawsuit on February 21, 2017.

While he has been incarcerated at WVCF, Mr. Taylor filed four new medical grievances. None of the four grievances were exhausted until after Mr. Taylor filed the present lawsuit. The IDOC grievance records indicate that Mr. Taylor did not properly complete the grievance process in order to exhaust his administrative remedies for any of the incidents at issue in this lawsuit before he filed his complaint.

### III. Discussion

Defendants argue that because Mr. Taylor failed to exhaust his administrative remedies as required prior to filing this action, his claims must be dismissed. *See Pozo*, 286 F.3d at 1024-25; *see also Roberts v. Neal*, 745 F.3d 232, 234-35 (7th Cir. 2014). Mr. Taylor argues that Defendants

are not entitled to summary judgment because he exhausted his administrative remedies after this action was filed.

### A. Prison Litigation Reform Act

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions.[1] *Booth v. Churner,* 532 U.S. 731, 741, n.6 (2001); *McCarthy v. Madigan,* 503 U.S. 140 (1992) ("Where Congress specifically mandates, exhaustion is required.").

It is the Defendants' burden to establish that the administrative process was available to Mr. Taylor. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and

---

[1] It is for this reason that the plaintiff's suggestion that he meets the imminent danger exception to exhaustion is summarily rejected. Dkt 44. No such exception exists. "[A] court may not excuse a failure to exhaust, even to take such [special] circumstances into account." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citing *Miller v. French,* 530 U.S. 327, 337 (2000)).

that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted).

### B. Failure to Exhaust

Defendants argue that the undisputed evidence shows that Mr. Taylor failed to exhaust his administrative remedies regarding his allegations against Nurse McNew and Corizon before he filed the present lawsuit. Mr. Taylor admits in his complaint that he submitted a grievance at NCCF related to the allegations in his complaint on September 16, 2016, and that the grievance was rejected. Additional grievance documentation from NCCF reflects that the single formal grievance Mr. Taylor correctly submitted before filing the present lawsuit was not appealed prior to Mr. Taylor filing this lawsuit and therefore Mr. Taylor did not exhaust his administrative remedies prior to filing the present lawsuit.

The PLRA specifically states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e. In other words, Mr. Taylor cannot complete the grievance process after filing his lawsuit. *See Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). Under these circumstances the grievances that were exhausted after this lawsuit was filed are irrelevant. The record reflects that Mr. Taylor did not exhaust any grievance until June 22, 2017, well after he filed the present lawsuit on February 21, 2017.

Mr. Taylor argues in response that the grievance he exhausted on June 22, 2017, was not rejected as untimely during the grievance process. Dkt. 40 and 42. But this argument misses the point. There is no dispute that Mr. Taylor completed the grievance process after filing this lawsuit.

The problem is that exhausting administrative remedies after filing a lawsuit does not establish compliance with the requirements of the PLRA. See *Ford*, 362 F.3d at 397 ("Ford's real problem . . . is timing. Section 1997e(a) says that exhaustion must precede litigation. 'No action shall be brought' until exhaustion has been completed. . . . And these rules routinely are enforced . . . by dismissing a suit that begins too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending . . . . To prevent this subversion of efforts to resolve matters out of court, it is essential to keep the courthouse doors closed until those efforts have run their course.") (internal citations omitted).

Finally, there is no basis to conclude that the grievance process was unavailable to Mr. Taylor. *See Ross,* 136 S. Ct. at 1858 ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted). Mr. Taylor states that he requested copies of informal grievances in October 19, 2012, but that he was denied those forms. This request for forms is well outside the time frame related to the circumstances present in this case which began nearly four years later on September 12, 2016. See dkt 43. Defendants have met their burden to show that the administrative remedy process was available to Mr. Taylor during the relevant time frame. Mr. Taylor simply filed this action before he completed the Offender Grievance Process.

## IV. Conclusion

Defendants have shown that Mr. Taylor did not exhaust his available administrative remedies prior to filing this lawsuit. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that this lawsuit should not have been brought and must now be dismissed without prejudice. *See Ford*, 362 F.3d at 401 (7th Cir. 2004)("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice."). The motion for summary judgment, dkt. [33], is

therefore **granted.** Because this action is dismissed, Mr. Taylor is not entitled to any relief and his motion for preliminary injunction, dkt. [27], is **denied as moot.**

Judgment consistent with this Entry shall now issue.

Date: 11/29/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

GREGORY A. TAYLOR
883235
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jeb Adam Crandall
BLEEKE  DILLON  CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com